(133 So. 22)

## McCORMICK v. TISSIER.

### 2 Div. 971.

Supreme Court of Alabama.
March 12, 1931.

S. F. Hobbs, of Selma, for appellant.

Pettus & Fuller and W. E. Callen, Jr., all of Selma, for appellee.

THOMAS, J.·

The plaintiff amends the complaint by withdrawing counts 1 and 2, and because of sustaining demurrer to count 3 takes a nonsuit, by reason of such adverse ruling.

The effect of defendant's demurrer sustained and causing nonsuit was that the agreement to sell the various articles and property of the going business was indivisible and impossible of performance, unless defendant and purchaser entered into a new contract fixing the price of "off brand" goods; that as to such goods no price was agreed upon, and no method fixed by the contract for ascertainment of such price without other and further agreement of the parties, the terms of which are not specified in the original contract; that no new agreement was made fixing the price or "right price" of stock designated as "off brand" goods.

It should have been stated, in the first place, that the complaint avers that within a reasonable time after the broker had been employed so to do, he found a purchaser who was ready, able, and willing to pay the full purchase price stipulated, and to assume all obligations required of him by the terms of the proposition of sale, and that the broker brought such purchaser to defendant's place, put him in touch with the broker's principal, the defendant (appellee here); that after such purchaser had signified his readiness, ability, and willingness to accept the proposition of sale, in accordance with the terms thereof, and after the broker had so notified defendant, the latter (appellee) refused to consummate said sale upon the terms originally dictated by him, but changed or increased the price at which he would agree to sell the fixtures, furniture, and office equipment from $8,000 to $20,000; and that solely by reason of this change in the terms of the original proposition of sale undertaken by plaintiff to negotiate, and did negotiate, the sale failed

424

of consummation. The point raised by the demurrer has been stated above.

It is established by this court that when a broker who procures a purchaser ready, able, and willing to buy on the terms stipulated by the principal and which constitute a lawful contract, and produces such purchaser to his principal within the period allowed, and notifies his principal of such facts as to sale and purchase on his terms, such broker is entitled to his agreed compensation, although by reason of his principal's fault the sale is never consummated. Johnston v. Guice, 217 Ala. 27, 114 So. 409; Ellison v. Sudduth Realty Co., 217 Ala. 337, 116 So. 333, and authorities; Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A. L. R. 1153; Terry Realty Co. v. Martin, 220 Ala. 282, 124 So. 901; Morris v. Clark, 202 Ala. 324, 80 So. 406; Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Eldorado Coal Co. v. Rust & Shelburne, 202 Ala. 625, 81 So. 567; Richardson v. Olanthe Milling Co., 167 Ala. 411, 52 So. 659, 140 Am. St. Rep. 45.

Where the sale fails of consummation because the principal insists on a change in the terms on which he authorized the broker to negotiate, the broker's commission is due. Justy v. Erro, 16 Cal. App. 519, 117 P. 575; Carlin v. Lifur, 2 Cal. App. 590, 84 P. 292; Buckingham v. Harris, 10 Colo. 455, 15 P. 817; Smith v. Fairchild, 7 Colo. 510, 4 P. 757; Wendle v. Palmer, 77 Conn. 12, 58 A. 12; Hutchinson v. Plant, 218 Mass. 148, 105 N. E. 1017; Wheelock v. Bornstein, 214 Mass. 595, 101 N. E. 1086; Crouch v. Bruckman, 167 Mo. App. 687, 151 S. W. 176; Warren Commission Co. v. Hull Real Estate Co., 120 Mo. App. 432, 96 S. W. 1038; Gorman v. Scholle, 13 Daly (N. Y.) 516; Goodale v. Lauth (Sup.) 123 N. Y. S. 930; McGill v. Gargoula (Sup.) 103 N. Y. S. 113; Marks v. Elliot (Sup.) 90 N. Y. S. 331; Hattenbach v. Gundersheimer (Com. Pl.) 13 N. Y. S. 814; Stetson v. Sun Co., 36 Pa. Super. Ct. 390; Villareal v. Passmore (Tex. Civ. App.) 145 S. W. 1086. That is, if the terms are those of an enforceable contract at law or in equity, and fails of consummation because of the failure or breach of the principal.

Does, then, the fact that the agreement between the principal and broker did not stipulate a fixed price for the "off brand" goods, but provided that the broker was to find a purchaser who would pay a "right" price, and the further fact that such price was never agreed upon, deprive the broker of his right to his commissions; if, as alleged in the broker's complaint, he produced a purchaser who was ready, able, and willing to buy on the terms stipulated by the principal (including the agreement to pay a "right" price for the "off brand" goods); if, solely by reason of a material change insisted upon by the principal in some other of the terms of sale,

the deal fell through without an attempt being made to agree on the "right" price for the "off brand" goods? Thus the question for decision is a narrow one, and is clearly defined. The question recurs, may a principal who has employed a broker to procure a purchaser of a stock of goods and the furniture, fixtures, and office equipment of a mercantile business, cause the negotiations to be broken off by insisting upon a material increase in the agreed price of the furniture, fixtures, and office equipment, after a ready, able, and willing purchaser had been produced by the broker, and then defeat the claim of the broker for his earned compensation, because the negotiations were broken off before one of the necessary details of the transaction was negotiated to a conclusion, although the purchaser was ready, able, and willing to fully perform and comply with every detail of the terms as originally dictated by the principal, and to which the broker procured, induced, and produced the buyer and presented him to the purchaser, ready, willing, and able to perform?

The decisions of this court are uniform and to the effect that unilateral contracts are not binding obligations and unenforceable, because the minds of the parties do not meet on all the material terms of a contract. Vinson v. Little Bear Sawmills, 216 Ala. 441, 113 So. 385; Jones v. Lanier, 198 Ala. 363, 73 So. 535; Lucas E. Moore Stave Co. v. Kennedy, 212 Ala. 193, 101 So. 894; Lucas E. Moore Stave Co. v. Woodley, 213 Ala. 570, 105 So. 878; Southern Fuel Co. v. Southern R. R. Co., 215 Ala. 355, 110 So. 715.

Here, the parties are alleged to have agreed upon the terms or some of the material matters of the contract—for sale of the staple goods, assumption of the rental contract, for the fixtures, furniture, and office equipment, and "at a right price" on all off brand goods. It is averred as to this that "plaintiff further avers that said purchaser so found by him was ready, able and willing to pay the full purchase price for all staple goods in said stock of goods at 90 cents on the dollar, and was also ready, able and willing to pay for all off brand goods in said stock of goods at a 'right' price, and was also ready, able and willing to pay for the fixtures, furniture and office equipment at a price of $8,000.00, and that said purchaser was also ready, able and willing to be obligated to assume the lease of the Broad Street store, then occupied by Tissier Hardware Company for the remainder of the term of said lease at a monthly rental of $200.00 or $210.00 per month, and to pay the rental on the same." This falls short of averring an enforceable contract at law or in equity. Essential details were left to subsequent agreement of the parties, and no third person was named by the agreement as arbitrator as to such open

matters. Richardson v. Bradford, 153 La. 725, 96 So. 546; Woods v. Matthews, 224 Mass. 577, 113 N. E. 201, and authorities cited. A different right or question is not presented by plaintiff's effort to supplement the proposition or excuse the failure of the meeting of minds of the parties as to all material matters. That is, the cause of the failure of consummation is averred as follows:

"* * * Defendant refused to consummate said sale upon the terms originally dictated by him, but, to the contrary increased the price at which he would agree to sell the fixtures, furniture, and office equipment of said business from $8,000.00 to a higher price, to-wit, $20,000.00, and refused to allow the consummation of the entire deal unless the said higher price then fixed by him for the fixtures, furniture and office equipment of said business was agreed to be paid; and plaintiff further avers that solely by reason of said refusal of defendant to consummate said sale upon the terms originally dictated by him, and as a proximate result thereof, the purchaser, who was still ready, able and willing to accept and carry out in every one of its terms, the original proposition of sale as dictated by defendant, was not willing and refused to pay the higher price which defendant then stipulated he would require for the fixtures, furniture and office equipment of said business; and solely because of this breach by defendant of the original agreement dictated by him, defendant rendered it impossible to consummate the deal which plaintiff had fully negotiated in all respects in accordance with his contract of employment, to and with the said purchaser so found by plaintiff."

It is certain that the amount and price of the regular stock or of "all staple goods stock" had been agreed upon and were matters of inventories of stock; the fixtures, furniture, and office equipment were of easy ascertainment on inspection of that place of business; the assumption of the lease contract and its price and duration were fixed by the terms of Tissier Hardware Company's lease; and the nature and amount of the "off brand" goods were likewise subject to disclosure on taking inventory and agreement as to what was within that class.

What then of the terms of the agreement for its sale "at a right price?" Did the minds of the parties meet as to all of these items in an indivisible contract for the sale of a going business, and was it on the reasonable market price of the "off stock" of that business at the time, place, nature, condition and character of each item of goods not within the class of regular stock and characterized as "off brand goods"? We have searched the books without finding an application of this term. The words "fair price" have been held to be of an ascertainable valuation. Van Doren v. Robinson, 16 N. J. Eq. 256, 260.

"Fair value" was the subject of Humbird Lumber Co. v. Thompson, 11 Idaho, 614, 83 P. 941; Huntington v. Attrill, 118 N. Y. 365, 368, 23 N. E. 544. See general terms in 25 C. J. 431; as "satisfied," 35 Cyc. 795; and "Price," 6 Words & Phrases, First Series, page 5547; 49 C. J. 1345, § 1; 4 Words & Phrases, First Series, pages 3078, 3103; 2 Words & Phrases, First Series, page 1795.

We are of opinion the minds of the parties had not met, and until then the broker was not entitled to the commissions for which the suit was brought. It is immaterial that the complaint specifically charged that the negotiations were broken off because of the change in the value the seller set upon his fixtures, office equipment, and furniture; the fact remained that the contract was not consummated by agreement of the parties as to all of the classes of articles of personal property that composed the going hardware business being negotiated for sale.

The theory of our decisions is thus stated (Sayre v. Wilson & Ingram, 86 Ala. 151, 156, 5 So. 157, 160):

"A broker who is employed to sell property on commission earns his compensation when he has been the efficient agent in procuring a satisfactory purchaser who is able, ready, and willing to buy the property on the terms fixed by the owner; and if the sale is not consummated by reason of the owner's fault, this fact is no bar to the recovery of commissions. Chambers v. Seay, 73 Ala. 372; Henderson v. Vincent, 84 Ala. 99, 4 So. 180; Vinton v. Baldwin [88 Ind. 104], 45 Am. Rep. 447; McClave v. Paine [49 N. Y. 561], 10 Am. Rep. 431. * * * The theory of the law is that, when the broker has brought the minds of the buyer and seller to an agreement upon all the terms of sale, and the buyer is able, ready, and willing to buy, this is a constructive consummation of the sale, so far as the broker is concerned, because he has done all that he was required to do. If he has negotiated to sell the property to a minor, or a lunatic, or a feme covert, or other person who is legally incapacitated to bind himself to perform the terms required, the owner may refuse to accept the proffered purchaser, and incurs no obligation to pay commissions for the service of procuring such a buyer."

This rule of liability for commissions of the seller has been adhered to in this jurisdiction. Eldorado Coal Co. v. Rust & Shelburne, 202 Ala. 625, 81 So. 567. The plaintiff did not have such purchaser under the contract that was enforceable in law according to all of its terms and material conditions.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.